Robert A. Rosette (Ariz. No. 18136)
Steve M. Bodmer (Ariz. No. 025074)
Rosette & Associates, PC
565 W. Chandler Blvd., Suite 212
Chandler, AZ 85225
480-889-8990 (Office)
480-889-8997 (Fax)
rosette@rosettelaw.com

Attorneys for the Plaintiff.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **LAC VIEUX DESERT BAND OF LAKE SUPERIOR CHIPPEWA INDIANS HOLDINGS MEXICO, LLC**, a Corporate Enterprise of the Lac Vieux Desert Band of Lake Superior Chippewa Indians, a federally recognized Indian Tribe,<br><br>                    Plaintiff,<br><br>vs.<br><br>**ARTURO ROJAS CARDONA**, an individual; **JUAN JOSE ROJAS CARDONA**, an individual; **JUEGOS DE ENTRETENIMIENTO Y VIDEOS DE GUADALUPE, SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE**, a Mexico Limited Liability Company; **ENTRETENIMIENTO DE MEXICO, SOCIEDAD ANONIMA DE CAPITAL VARIABLE**, a Mexico Registered Corporation; and **ATLANTICA DE INVERSIONES CORPORATIVAS, SOCIEDAD ANONIMA DE CAPITAL VARIABLE**, a Panama Registered Corporation; **JUEGOS DE ENTRETENIMIENTO Y VIDEOS DE MONTERREY, SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE**, a Mexico Limited Liability Company; **ATLICO USA, LLC**, a Nevada Corporation; **E-MEX HOLDINGS,** | Case No. 2:08-cv-01067-ROS<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO RULE 12(B)(1).**<br><br>**(Honorable Roslyn O. Silver)** |

| | |
|---|---|
| 1 | **LLC**, a Nevada Corporation; **ESCOBEDO RECREATION HOLDINGS, LLC**, a Nevada Corporation; **GUADALUPE RECREATION HOLDINGS, LLC,** a Nevada Corporation; **MATAMORAS RECREATION HOLDINGS, LLC**, a Nevada Corporation; **REYNOSA RECREATION HOLDINGS, LLC**, a Nevada Corporation; **SAN LUIS POTOSI RECREATION HOLDINGS, LLC**, a Nevada Corporation; **SAN PEDRO RECREATION HOLDINGS, LLC**, a Nevada Corporation; **XOCHIPILLI, LLC**, a Nevada Corporation; **XYZ CORPORATIONS**, I-X and **DOES**, I-X, |

Defendants.

Defendants, ATLICO USA, LLC (Nevada); E-Mex Holdings, LLC (Nevada); Escobedo Recreation Holdings, LLC (Nevada); Guadalupe Recreation Holdings, LLC ("GRH") (Nevada); Matamoras Recreation Holdings, LLC (Nevada); Reynosa Recreation Holdings, LLC (Nevada); San Luis Potosi Recreation Holdings, LLC (Nevada); San Pedro Recreation Holdings, LLC (Nevada); and Xochipilli, LLC (Nevada) (collectively the "Certain Defendants") filed a Motion to Dismiss the Certain Defendants from the action of Plaintiff, Lac Vieux Desert Band of Lake Superior Chippewa Indians Holding Company ("LVDHM"), pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. LVDHM submits this Memorandum in opposition to the Certain Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("*12(b)(1) Motion*").

I.   **PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT.**

This is an action for breach of contract, conversion, breach of fiduciary duty, fraud, breach of the implied covenant of good faith and fair dealing, constructive trust, and piercing the corporate veil. As alleged in LVDHM's complaint filed in the Maricopa County Superior Court, Defendants induced Plaintiff to invest $6,500,000.00 in a casino venture in Guadalupe, Mexico ("Guadalupe Casino") by promising Plaintiff a 26% equity interest and 26% of the Guadalupe Casino's net revenues. Since the transfer of Plaintiff's investment in 2006, Defendants breached the agreements applicable to the transaction by withholding LVDHM's share of the Guadalupe Casino's profit. Moreover, Defendants converted LVDHM's capital investment for their own purposes, and refuse to either comply with their obligations or refund the investment.

Certain Defendants sought dismissal under FRCP 12(b)(1) on the grounds that an arbitration clause in the Term Sheet is applicable to the dispute and they allege that, "[w]hen an arbitration agreement is . . . between parties of different countries, a lawsuit between the parties must be dismissed for lack of subject

matter jurisdiction." *12(b)(1) Motion* at 4 citing *Ripmaster v. Toyoda Gosei, Co., Ltd.,* 824 F. Supp. 116 (E.D. Mich. 1993).

The arbitration clause is not applicable to this dispute and it is not a certainty that Certain Defendants are "parties of different countries." This Court has subject matter jurisdiction because the arbitration clause is inapplicable, there is complete diversity, and the amount in controversy is proper.

## II. CERTAIN DEFENDANTS' MOTION SHOULD BE DENIED BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION.

### A. Federal Diversity Jurisdiction is Proper.

Federal diversity jurisdiction over this matter is proper pursuant to 28 U.S.C. §1332(a)(1) and (2) because the amount in controversy exceeds $75,000.00 and the parties are citizens of different states and countries.

### B. The Court Must Decide Whether the Parties Agreed to Submit this Dispute to Arbitration Before the Dispute Can Be Dismissed to be Arbitrated by the Certain Defendants.

As cited in the Certain Defendants' Memorandum, when presented with a question of arbitrability, the Court's role is to determine "(i) whether a valid arbitration agreement exists and (ii) whether the scope of the parties' dispute falls within that agreement." *12(b)(1) Motion* at 5, citing *Filimex, LLC v. Novoa Investments, LLC, 2006* WL 2091661 at *3 (D. Ariz. July 17, 2006). "Issues of substantive arbitrability go to the heart of whether or not there is a contract to arbitrate and what writings, actions, or inaction constitute the contract." "*The Arbitration Contract—Making it and Breaking it*," Thomas H. Oehmke & Joan M. Brovins, 83 Am. Jur. 3d 1 *Arbitrability* § 52 (updated July, 2008).

As will be explained below, the Term Sheet contains an arbitration provision. However, the Parties' dispute does not fall within the scope of the Term Sheet. Because the Certain Defendants take the opposite position, a question of

law exists. It must be resolved by this Court before the dispute can be dismissed to be arbitrated by the Certain Defendants.

### C. The Arbitration Provision in the Term Sheet Does Not Apply to this Dispute.

The arbitration provision in the Term Sheet only applies to disputes which do not arise under the Security and Depository Agreements. The Security and Depository Agreements are separate agreements from the Term Sheet which operate at the exclusion of the arbitration provision in the Term Sheet because the Security Agreement contains a separate dispute resolution mechanism which calls for a judicial proceeding in Arizona. Every cause of action raised by Plaintiff is either a "Default" under the Security Agreement or a tort related thereto. The dispute resolution provision in the Security Agreement to address "Defaults" is binding. Accordingly, this Court has subject matter jurisdiction.

#### *1. The arbitration provision in the Term Sheet only applies to disputes which do not arise under the Security and Depository Agreements.*

Defendants ARTURO CARDONA and JUAN CARDONA made written representations to the Tribe's Chairman and attorney that are contained in a legally binding Term Sheet which was used to memorialize the intention of the Parties before the agreements were executed. (*See* Ex. 2, Term Sheet). The Term Sheet contains no signature block. It was finalized some weeks before the other agreements and later initialed by the Parties. (*See* Ex. 2, Term Sheet and Ex. 6, Minutes from August 28, 2006 Shareholder's meeting).

Certain Defendants motion states "[i]n this case, the parties, citizens of different countries, entered into the Term Sheet which provided for mandatory final/binding arbitration of **any** dispute between the parties." *12(b)(1) Motion* at 5 (bold text included in the original). In fact the Term Sheet contains the following:

3.

> If a dispute, controversy or claim ("Dispute") arises between the Parties relating to the interpretation or performance of the Project, or the grounds for the termination, appropriate representatives of each Party who shall have the authority to resolve the matter shall meet or confer within 10 days of written request of either party to attempt in good faith to negotiate a Resolution of the Dispute prior to pursuing other available remedies. Discussions and correspondence relating to trying to resolve such Dispute shall be treated as confidential information developed for the purpose of settlement.
>
> Any Dispute which the Parties cannot resolve through mediation within ten (10) days, unless otherwise mutually agreed, shall be submitted to final and binding arbitration under the Rules of Arbitration of the International Chamber of Commerce ("ICC"), by three (3) arbitrators appointed in accordance with the said rules, the arbitration places shall be Monterrey, Nuevo Leon, Mexico.
>
> The Security and Depository Agreements shall be under the jurisdiction and laws of the State of Arizona, United States.

The phrase "Any Dispute which the Parties cannot resolve through mediation" in the second paragraph refers to the paragraph above it which limits the arbitration provisions to "a dispute, controversy or claim ("Dispute") . . . between the Parties relating to the interpretation or performance of the Project, or the grounds for the termination," which the parties shall first attempt to meet and confer about. In addition, the same series of paragraphs carves out an exception for disputes under the Security and Depository Agreements

The Term Sheet created a specific exclusion for the Security and Depository Agreements. *Id.* Therefore, the Parties did not agree to submit to arbitration in instances where the Parties Defaulted under the Security and Depository Agreements. (*See* Ex. 2, Term Sheet, Ex. 4, Security Agreement, Ex. 27, Williams Declaration). Affirming their understanding expressed in the Term Sheet, the Security Agreement defines what will be considered a "Default" and contains a forum selection clause for resolving disputes regarding a "Default" by Defendants Juegos De Entretenimiento y Videos De Guadalupe ("JDG"),

4.

Entretenimiento De Mexico ("E-MEX"), Atlantica De Inversiones Corporativas ("ATLICO"), GRH and ARTURO CARDONA, collectively referred to in the Security Agreement as the "Mexican Counterparts." (*See* Ex. 4, Security Agreement). A forum selection clause cannot be utilized to establish subject matter jurisdiction. However, in this instance the agreement to such clause illustrates the intent of the Parties as to where and how they planned to resolve disputes regarding "Defaults" under the Security Agreement. It shows they did not intend to address "Defaults" through arbitration.

The Security Agreement bound the Parties to the following:

> [t]his Agreement is intended to take effect as a sealed instrument and will be governed by, and construed in accordance with, the laws of Arizona, without regard to its conflicts of law provisions. Mexican Counterparts agree that any action or claim arising out of, or any dispute in connection with, this Agreement, any rights, remedies, obligations, or duties hereunder, or the performance or enforcement hereof or thereof, may be brought in the courts of Arizona." (*See* Ex. 4, Security Agreement). It also stated in another section, "Mexican Counterparts hereby consents to the jurisdiction of the Courts of the State of Arizona.

*Id.* Similarly, Section 4.2 in the Depository Agreement states that "[t]his Agreement shall be construed in accordance with and governed by the laws of the State of Arizona." (*See* Ex. 3, Depository Agreement). The Term Sheet, and the Security and Depository Agreements affirm that "the courts of Arizona" or the "Courts of the State of Arizona" are the forums for disputes regarding "Defaults" and the governing law is that of the State of Arizona. It is logically impossible for those agreements to contain those various provisions if the arbitration provision in the Term Sheet is to be operative as to Defaults under the Security Agreement.

In *Ripmaster,* the Court declared that, "[c]learly, the arbitration clause was intended to be construed in its broadest terms, covering 'any dispute or controversy which may arise out of, in connection with or in relation to the

5.

Agreement.'" *Ripmaster,* at 117. In that case, the arbitration provision was very broad with no limitations. The Court had no choice but to dismiss it to the only forum selected, which was Japan.

The Term Sheet in this dispute, on the contrary is not broad. It limits the issues subject to arbitration to the interpretation or performance of the Project, or the grounds for termination. It contains a specific exclusion for the Security and Depository Agreements. In *Scherk*, like the cases cited by the Certain Defendants, there were not multiple agreements that contained more than one dispute resolution mechanism. *Scherk v. Alberto-Culver Co.,* 417 U.S. 506 (1974). Because of the way the various agreements interrelate, the Term Sheet, though binding, does not compel automatic dismissal of the dispute for arbitration in Mexico.

### 2. *The agreement to submit to a judicial proceeding in Arizona in the event of a Default was reasonable and the product of extensive arms-length negotiations.*

The fact that Arizona was selected by the Parties for resolving disputes if a Default occurred was not random, nor was it the product of a hasty decision. During the negotiations of the Partnership Agreements extensive discussions took place concerning dispute resolution. (*See* Ex. 27, Williams Declaration). The result of these discussions was that the Parties agreed Arizona was the best place to resolve disputes if a Default were to occur. *Id.* Arizona was seen as the most convenient place for litigation because it was closer than Michigan for the Defendants and was easily reachable from Monterrey in Northern Mexico. *Id.* In fact, JUAN CARDONA and ARTURO CARDONA sent their private jet to the United States to pick up the Tribal Council on several occasion and on at least one occasion sent their jet to Arizona to pick up the Plaintiff's attorney. *Id.*

Plaintiff favored Arizona because it is where the tribal attorneys are

6.

located, which would reduce litigation and travel costs if a dispute were to arise and it was easier to reach than Mexico. *Id.* Part of what attracted the Plaintiff to the deal and induced them to invest was the fact that the Defendants agreed to keep the Plaintiff out of foreign courts by agreeing to resolve disputes in the courts of Arizona and to select Arizona law to govern the dispute. *Id.*

### *3.    The Security and Depository Agreements are separate agreements from the Term Sheet which specifically exclude the arbitration provision in the Term Sheet.*

The Term Sheet, Security, Depository, and Pledge Agreements, and the executed and notarized JDG Shareholder's Meeting Minutes from the August 28, 2006 shareholders (collectively "Partnership Agreements") explain the transaction between the Plaintiff and the Defendants. The Parties agreed to two different dispute resolution mechanisms depending on the nature of the dispute and the agreement the dispute arises under.

The Security and Depository Agreements are intentionally excluded from arbitration. An agreement to arbitrate may retain its validity despite later agreements between the parties, at least where the later agreements do not specifically exclude arbitration or supersede the original agreement. *Rosenblum v. Drexel Burnham Lambert Inc.,* 700 F. Supp. 874 (E.D. La. 1987). The Security and Depository Agreements only contemplate jurisdiction in Arizona if a dispute arises thereunder which logically operates at the exclusion of arbitration in Nuevo Leon. The Term Sheet affirms this because it has an exclusion in that document ("[t]he Security and Depository Agreements shall be under the jurisdiction and laws of the State of Arizona, United States"). (*See* Ex. 2, Term Sheet).

### *4.    The causes of actions are Defaults under the Security Agreement and torts, requiring judicial proceedings.*

Plaintiff's first cause of action is for breach of contract. The allegations

7.

arise out of Defendants' failure to pay the required Cash Flow Participation from the Casino. The obligation to make the Cash Flow Participation payments is contained in the Depository Agreement and the failure to pay constitutes a "Default" under the Security Agreement because a "Default" is defined as follows:

> Each of the following occurrences will constitute a Default:
> (a) A Default will occur hereunder or under any of the Transaction Documents.
> (b) Juegos de Guadalupe will fail to transfer to LVDHM its Cash Flow Participation from the Gross Daily Profit at the time and in the manner required by this Agreement or any material breach of Mexican Counterparts that impacts LVD Mexico Holdings, LLC's interest in the Pledged Revenues.
> (c) Mexican Counterparts will Default in the due observance or performance of any of its other obligations in this Agreement or the Transaction Documents.
> (d) The Casino fails to open due to the fault of an action taken by Mexican Counterparts.

(See Ex. 4, Security Agreement). Thus, Defendant ARTURO CARDONA when he signed the Security Agreement agreed that he as an individual, and Defendants E-MEX, ATLICO, GRH and JDG ("the Mexican Counterparts"), would resolve disputes regarding a Default in the courts of Arizona, governed by Arizona law.

The Plaintiff's other causes of actions are torts. Unless the language used in a forum selection clause compels a contrary conclusion, the clause may be held to apply to tort claims as well as to contract claims. *Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 (9th Cir. 1988)*; Kochert v. Adagen Med. Int'I, Inc.,* 491 F.3d 674, 679 (7th Cir. 2007). Therefore, the agreement to resolve disputes in the courts of Arizona, rather than through arbitration in Mexico is also applicable to the Plaintiff's causes of actions alleging torts.

### 5. Because Certain Defendants accept that the Term Sheet is applicable to them, Certain Defendants should also accept that the Security and Depository Agreements apply to them.

Certain Defendants accept in the Motion to Dismiss for Lack of Subject Matter Jurisdiction that the Term Sheet is binding and that it is an agreement that they can rely upon to argue that this dispute should be resolved in another forum. As stated above, the Term Sheet does not have a signature block, was verbally agreed to by ARTURO CARDONA and was initialed by him. No explanation is provided as why the Certain Defendants as non-signatories to the agreements, except GRH, can rely upon on the Term Sheet. They merely accept the validity and applicability of the Term Sheet to them without explanation.

It logically follows that if the Certain Defendants are all bound by the Term Sheet, then Certain Defendants are also bound by the Security and Depository Agreement. However, in the Motion to Dismiss for Lack of Personal Jurisdiction, they do not challenge whether the forum selection clause is valid and instead focus their arguments solely on the fact that according to them the agreements are not binding on non-signatories.

In *Ripmaster*, the Court found the agreement binding on the non-signatories to the agreement because they benefited from the agreement. *Ripmaster,* at 117. The same reasoning applies to Certain Defendants with regard to the Security and Depository Agreements. Because they are not challenging whether the agreements apply to the Certain Defendants as non-signatories in their Motion to Dismiss for Lack of Subject Matter Jurisdiction, Plaintiff will not address herein why the Partnership Agreements are binding on the Defendants. Plaintiff included a lengthy discussion of the issue in its Opposition to the Motion to Dismiss for Lack of Personal Jurisdiction. Such discussion is incorporated by reference herein should the Court need an explanation as to why all of the Defendants are bound by

9.

the Security and Depository Agreements and corresponding requirement to handle disputes related to them in the courts of Arizona.

### D. Because the arbitration provision in the Term Sheet is not applicable to this dispute, the Parties cannot be required to submit to arbitration.

Defendants cite *Kanazawa Ltd. v. Sound, Unlimited*, 440 F.2d 1239 (9th Cir. 1971) and *Aerojet-General Corp. v. Am. Arbitration Ass'n,* 478 F.2d 248 (9th Cir. 1973) for the proposition that Federal Courts express a policy in favor of arbitration and that this Court should liberally construe the arbitration agreement in the Term Sheet. These legal maxims are not helpful in this matter.

In *Kanazawa* there was no disagreement that an arbitration agreement existed and Kanazawa failed to even submit a brief on appeal. *Kanazawa,* at 1239. The only question before the Court was given the valid agreement to arbitrate whether such agreement would apply in Guam. *Id.* Similarly, in *Aerojet*, the Parties agreed there was a binding arbitration agreement. *Aerojet,* at 248. However, they disagreed on whether the locale of New York or California was proper. *Id.* In both of those cases the Court attempted to effectuate the intent of the agreement to arbitrate and liberally construed such agreements to ensure that the Parties would have a forum for the agreed upon arbitration.

The factual situation in the cases relied upon by Certain Defendants are different from this dispute because the Parties do not agree that they are to resolve the specific causes of action raised in the complaint via arbitration. Also dissimilar to the aforementioned cases is that there were no conflicting provisions in multiple agreements between the parties. In this situation, the Court cannot liberally construe the Term Sheet in the face of contrary evidence.

The Parties negotiated and intended to carve out Arizona jurisdiction in the

10.

Security and Depository Agreements. "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *AT&T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648 (1986) (internal quotation and citation omitted). Therefore, this Court cannot ignore the ample evidence presented by Plaintiff regarding the Defendants' agreement to resolve disputes in Arizona and the exclusion in the Term Sheet that, "[t]he Security and Depository Agreements shall be under the jurisdiction and laws of the State of Arizona, United States." (*See* Ex. 2, Term Sheet).

### E. Certain Defendants' Assertion that Dismissal is Appropriate is Not Legally Supported.

Automatic dismissal is not warranted because, as established above, the arbitration provision is not binding to this Dispute and it is not known whether the Certain Defendants are citizens of a different country. If the Court finds arbitration appropriate, it cannot dismiss for lack of subject matter jurisdiction to enforce the arbitration provision. Pursuant to the Federal Arbitration Act and cases such as *Filimex, LLC,* at *2, it must stay the proceedings against the Certain Defendants.

#### *1. Plaintiffs do not concede that the Certain Defendants are from a different country.*

In *Ripmaster*, the Court held that "when an arbitration agreement is between parties of different countries, a lawsuit between the parties must be dismissed for lack of subject matter jurisdiction." *Ripmaster,* at 117. Plaintiff agrees that JDG, E-MEX, and Juegos de Entretenimiento y Videos de Monterrey are Mexican corporations and ATLICO is Panamanian. As to the individual Defendants ARTURO CARDONA and JUAN CARDONA and the Certain Defendants, which are Nevada Limited Liability Companies ("LLC's") Plaintiff does not concede that they are definitively from a different country. LLC's are

11.

citizens of the state of each of its members. *Johnson v. Columbia Props. Anchorage,* LP, 437 F.3d 894, 899 (9th Cir. 2006). However, it is believed that Defendants ARTURO CARDONA and JUAN CARDONA have several residences. ARTURO CARDONA is a member of each LLC and JUAN CARDONA is an agent of each LLC.

The place where they maintain their permanent principal home is unknown to Plaintiffs. Defendant ARTURO CARDONA may be a resident of Mexico and/or several states in the United States as he held himself out as living in several states. Defendant ARTURO CARDONA provided the Tribe with an address located in Inver Grove Heights, Minnesota during the diligence phase of the transaction. (*See* Ex. 25, Resume). He provided the Tribe with a United States phone number with a 612 area code, which corresponds to the greater Minneapolis area. *Id.* The resume he gave the Tribe describes him maintaining offices in Chicago, Minneapolis, and Mexico City. *Id.* The resume lists his projects as being in Minneapolis, Chicago, Tampa Bay, Mexico City, and Los Angeles. *Id*.

The Nevada Secretary of State reports on the officer list for Defendant ATLICO USA, LLC, Defendant ESCOBEDO RECREATION HOLDINGS, LLC, Defendant GRH, Defendant SAN LUIS POTOSI RECREATION HOLDINGS, LLC, and Defendant SAN PEDRO RECREATIONAL HOLDINGS, LLC that "Manager" ARTURO CARDONA lives in Inver Grove Heights, Minnesota. (*See* Ex. 22, Nevada Secretary of State). Those records have been updated annually since 2005 and as recently as January 18, 2008. *Id.* The domestic charter for a company called Barakeil, LLC, registered on May 21, 2008, lists Defendant ARTURO CARDONA as the Manager, and lists his address as being in Lake Charles, Louisiana. (*See* Ex. 26, Barakeil).

During the initial diligence phase, Defendant ARTURO CARDONA provided the Tribe with an article about him and one of his companies, Archon

12.

Design. (*See* Ex. 24, Archon Design and Tango Media). The article described Archon's offices as being located in "Minneapolis, Chicago, and Mexico City." *Id.* In the article it further stated "Staff: Four – U.S.: myself: Arturo Rojas Cardona." *Id.* It then listed three other individuals in the Mexico City office. The implication was that ARTURO CARDONA headed up the Minneapolis and Chicago offices. *Id.* A website for Archon Design, a link to which Defendant ARTURO CARDONA provided to the Plaintiff during the diligence phase, listed two addresses, one in Minneapolis and one in Chicago. *Id.* It also provided a phone number for a number currently listed in Chicago. *Id.* As recently as June 30, 2008, the World Wide Design Directory listed Archon Design with a Chicago address and a currently listed phone number in Chicago. *Id.*

The current website for the Tango Media design company, also owned by Defendant ARTURO CARDONA, lists Chicago, Los Angeles, and Monterrey, Mexico, as the principal places of business. (*See* Ex. 24, Archon Design and Tango Media). The meetings that Defendants held in Mexico with Plaintiffs were usually all held at Tango Media's Monterrey offices.

Because Defendant ARTURO CARDONA is known to have offices in several cities in the United States, is known to have lived in the United States for numerous years and is believed to be currently living in the United States, it is possible that he is either a citizen of the United States or a dual national of the United States and Mexico. He may also be a citizen of Mexico lawfully admitted to the United States for permanent residence.

Defendant JUAN CARDONA was known to live in Monterrey, Mexico. (*See* Ex. 27, Williams Declaration). However after two shooting incidents, one of which targeted him personally and killed the driver in his vehicle, he is believed to have moved. In one e-mail to the Manager of LVDHM he reported that he left Monterrey after the first shooting to live somewhere else. (*See* Ex. 13, Email from

13.

J. Cardona to Chairman Williams). It is not known whether he has continued to reside in Mexico or whether he maintains a residence in the United States. The last time Plaintiff was in Mexico, in April 2008, Defendant JUAN CARDONA appeared to be living in Monterrey. (*See* Ex. 27, Williams Declaration).

Defendant JUAN CARDONA is known to have lived in the United States for numerous years, to be an alumnus of the University of Iowa, and he indicated that some of his family members live in the United States. *Id.* He appears in manner and speech to be a person from the United States. *Id.* It is possible that he is a citizen of the United States or a dual national of both the United States and Mexico. He may also be a citizen of Mexico lawfully admitted to the United States for permanent residence.

Therefore, it is not known whether the LLC's are citizens of Mexico or the United States. As such, automatic dismissal because Certain Defendants are allegedly citizens of a different country is not appropriate.

> ### 2. *Alternatively, if the Court deems the arbitration provision to be binding then it must stay the proceedings as to the Certain Defendants.*

The decision of United State District Court of Arizona in *Filimex* contains the following discussion:

> The Court finds that Novoa's Motion to Dismiss is a procedurally sufficient mechanism to enforce the Arbitration Provision.
>
> Instead of filing a motion to compel arbitration pursuant to section 4 of the FAA, Novoa filed a Motion to Dismiss for Lack of Subject Matter jurisdiction under Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction contests the Court's authority to hear and decide the case, and is thus typically used when the claims asserted do not involve federal questions and there is no diversity of citizenship between the parties or other basis for the federal court to exercise its limited jurisdiction. *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and

14.

> Procedure Civil 2d § 1350 (2d ed.1990). Rule 12(b)(1) is a flexible rule, though, that "often serv[es] as a vehicle for raising various residual defenses" such as failure to exhaust administrative remedies, lack of standing, or sovereign immunity. *Id.*
>
> Moreover, the FAA itself does not state that a document entitled "motion to compel" must be filed to trigger the protections of the FAA, but states that the party must "petition" the court for an order directing arbitration to proceed. Courts, therefore, have allowed the party to "petition" the court through the use of a motion to dismiss for lack of subject matter jurisdiction.

*Filimex, LLC,* at *2.

Ultimately, the Court did not dismiss the action and stayed the proceedings. The case speaks to the fact that the motion to dismiss is a legally sufficient mechanism to compel arbitration, if the underlying rationale of a motion to dismiss is that a valid arbitration agreement exists, as the Certain Defendants alleged in this case. Thus, Certain Defendants' motion to dismiss should be treated as a motion to compel arbitration.

The Federal Arbitration Act ("FAA") governs arbitrations involving transactions in interstate or foreign commerce. 9 U.S.C. § 1. The FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in Default in proceeding with such arbitration.

9 U.S.C. § 3. Consequently, the FAA requires that if this Court determines that the arbitration provision in the Term Sheet can be relied upon to dismiss Certain Defendants then a stay is necessary, not actual dismissal.

*SEI v. Connex,* 2006 WL 2975591 (N.D. Cal. Oct. 18, 2006) followed

*Filimex*. It also affirms that the Court does not have the power to literally dismiss. In that case, *Connex* moved to dismiss for lack of subject matter jurisdiction on the ground that the parties contracted to resolve their disputes exclusively through arbitration. The district court stated that "is not deprived of jurisdiction altogether." *Id.* citing *Nicholson v. Labor Ready, Inc.,* 1997 WL 294303 (N.D. Cal. June 5, 1997). The Court, utilizing its jurisdiction under the FAA and pursuant to §4 of the FAA agreed that it, "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* citing 9 U.S.C. §4. The Court also found that, "pursuant to §3 of the FAA, the court is required to stay, not dismiss, the action pending arbitration." *Id.* citing 9 U.S.C. § 3 and *Morris v. Morgan Stanley & Co.,* 942 F.2d 648 (9th Cir. 1991). The Court also wrote "[a]lthough Connex does not expressly move to compel arbitration, the gravamen of Connex's motion is that 'the issue of Defendant's alleged procedural Default is properly left to the arbitrator to decide.' Because SEIU has addressed the merits of Connex's arguments in support of arbitration, the Court will construe the instant motion as a motion to compel arbitration." *Id.* citing *Filimex, LLC,* at *2-3.

Therefore, if this Court accepts the Motion to Dismiss for Lack of Subject Matter Jurisdiction by Certain Defendants because the arbitration provision is deemed to be binding, it must treat the motion as one for compelling arbitration and stay the proceedings regarding the Certain Defendants rather than dismiss.

**F.     Conclusion.**

Federal diversity jurisdiction is proper because there is complete diversity and the amount in controversy exceeds $75,000. Before ruling on the motion the court must decide whether the parties agreed to dismiss this dispute to arbitration. The evidence shows that the Term Sheet does not apply to the dispute. Because the arbitration provision in the Term Sheet is not applicable the dispute at issue,

16.

the Parties cannot be compelled to submit this dispute to arbitration. Alternatively, if the Court decides to grant the Certain Defendants' motion, then it must treat the motion as one to compel arbitration and stay the proceedings as to the Certain Defendants, pending arbitration.

### III.   PRAYER FOR RELIEF

The Plaintiff requests that this Court deny the dismissal for lack of subject matter jurisdiction, except as to Xochipilli, LLC (the Plaintiff has separately moved to drop Xochipilli, LLC as a party to the dispute in its Motion to Amend). If this Court grants dismissal to any of the Certain Defendants, Plaintiff request that such dismissal be treated as a motion to compel arbitration requiring a stay as to the Certain Defendants and that any action be without prejudice. Further, Plaintiff requests leave to amend its complaint to correct any deficiencies identified in the Court's Order.

RESPECTFULLY SUBMITTED this 25th day of July, 2008.

By:  /s/ Steve M. Bodmer

Robert A. Rosette (Ariz. No. 18136)
Steve M. Bodmer (Ariz. No. 025074)
Rosette & Associates, PC
565 W. Chandler Blvd., Suite 212
Chandler, AZ 85225
480-889-8990 (Office)
480-889-8997 (Fax)
rosette@rosettelaw.com

17.

**Certificate of Service**

I hereby certify that on July 25, 2008, I electronically filed the foregoing with the Clerk of the Court using the ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Steve M. Bodmer

COPY of the foregoing mailed*/
electronically delivered ** this 25th day of
July 2008 to:

John T. Gilbert*/**
Randy A. McCaskill*/**
ALVAREZ & GILBERT, PLLC
14500 N. Northsight Blvd., Ste. 216
Scottsdale, AZ 85260

Attorneys for Certain Defendants:

Atlico USA, LLC;
E-Mex Holdings, LLC;
Escobedo Recreation Holdings, LLC;
Guadalupe Recreation Holdings, LLC;
Matamoras Holdings, LLC;
Reynosa Recreation Holdings, LLC;
San Luis Potosi Recreation Holdings, LLC;
San Pedro Recreation Holdings, LLC; and
Xochipilli, LLC